# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID G. TIBBETTS,<br><br>                         Plaintiff,<br><br>                   *v.*<br><br>THE 3M COMPANY f/k/a Minnesota Mining and Manufacturing Company; BASF CORPORATION, Individually and as Successor in Interest to BASF Polyurethane Foam Enterprises LLC; BUCKEYE FIRE EQUIPMENT COMPANY; CASCO INDUSTRIES, INC.; CHEMGUARD, INC.; DOOLEY TACKABERRY OF LOUISIANA, INC., Individually and as Successor in Interest to Arthur Dooley & Son of Louisiana, Inc.; E. I. DU PONT DE NEMOURS AND COMPANY; FIRE PRODUCTS GP HOLDING, LLC; HONEYWELL SAFETY PRODUCTS USA, INC.; KIDDE FIRE FIGHTING, INC., Individually and as Successor in Interest to National Foam, Inc.; KIDDE-FENWAL, INC., Individually and as Successor in Interest to Kidde Fire Fighting, Inc., f/k/a Chubb National Foam, f/k/a National Foam System, Inc.; PHARMACIA LLC, Individually and as Successor in Interest to Pharmacia Corporation, f/k/a Monsanto Company; SHELL OIL COMPANY; SOUTHLAND FIRE AND SAFETY EQUIPMENT, INC.; THE CHEMOURS COMPANY; THE DOW CHEMICAL COMPANY; TYCO FIRE PRODUCTS LP, Individually and as Successor in Interest to The Ansul Company; and WYETH HOLDINGS LLC., Individually and as Successor in Interest to American Cyanamid Company,<br><br>                  Defendants. | CIVIL ACTION NO.:<br><br>SECTION:<br><br>JUDGE:<br><br>MAGISTRATE JUDGE: |

## NOTICE OF REMOVAL

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by and through undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Civil District Court for the Parish of Orleans to the United States District Court for the Eastern District of Louisiana.   As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiff David G. Tibbetts, a longtime firefighter, seeks to hold Tyco and the other Defendants liable for injuries allegedly caused by his occupational exposure to per- and polyfluoroalkyl substances ("PFAS") contained in firefighting agents known as aqueous film-forming foam ("AFFF").  Some of the AFFF to which Plaintiff was exposed was "MilSpec AFFF" that Tyco and certain other Defendants developed and manufactured for sale to the United States military, civilian airports, and others in accordance with the military's rigorous specifications. Until recently, those specifications expressly required the use of PFAS in the product.  One of the sites at which Plaintiff was exposed to AFFF, Louis Armstrong New Orleans International Airport (the "Airport"), is a "Part 139" civilian airport that is required by law to stock and use MilSpec AFFF.  Accordingly, Tyco intends to assert the federal "government contractor" defense in response to Plaintiff's claims.  *See Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988).  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with

2

the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

2.     This action was filed on November 20, 2021, in the Civil District Court for the Parish of Orleans, No. 2021-9470 (Ex. A, Petition).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 98(a) and 1441(a) because the Civil District Court for the Parish of Orleans is located within the Eastern District of Louisiana.

3.     Tyco Fire Products LP and Chemguard, Inc. were each served with the Petition on December 15, 2021.  This Notice of Removal is timely filed under 28 U.S.C. § 1446(b).

4.     Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under Section 1442(a)(1).  *See, e.g.*, *Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006).

5.     Plaintiff alleges generally that the Defendants, including Tyco, "designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise were in the custody and/or control of" AFFF products containing PFAS, and that those products were used by fire departments and at facilities where Plaintiff worked and was exposed to the material.  (Ex. A ¶ 24).  Plaintiff further alleges that he has developed bladder cancer as a result of his exposure to AFFF.  (*Id.* ¶ 2).

6.     Plaintiff asserts claims against all Defendants for strict liability and negligence (*id.* ¶¶ 63–64); for civil conspiracy (*id.* ¶¶ 74–81); and for punitive damages (*id.* ¶¶ 90–97).  Plaintiff asserts against a subset of Defendants (the "Supplier/Distributor/Manufacturer/Seller" Defendants) a separate claim that does not expressly invoke an identified cause of action but appears to

be substantively duplicative of the strict liability/negligence claim. (*Id.* ¶¶ 65–73). In addition, Plaintiff asserts a separate claim for negligence and strict liability against the "Premises Owner" Defendants. (*Id.* ¶¶ 82–89).

7.      Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case, and is filing a copy with the Clerk of the Civil District Court for the Parish of Orleans.

8.      By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

9.      Tyco reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442

10.      Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal by a private entity is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted pursuant to a federal officer's directions; (c) its actions taken pursuant to a federal officer's direction are connected or associated with the lawsuit; and (d) it can assert a "colorable" federal defense. *See, e.g., Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (*en banc*); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017).

11.      Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question

element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (alterations in original) (internal quotation marks omitted).

12. All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018). The court currently overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that the plaintiff's injuries are caused, at least in part, by MilSpec AFFF. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF

litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

## A.   MilSpec AFFF

13.     Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields (including Air National Guard facilities), and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property.   Indeed, the United States Naval Research Laboratory developed AFFF in response to catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 and *USS Enterprise* in 1969.[2]   Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

14.     The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command.   The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4]   All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.   Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]   The

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

15.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."  All fluorocarbon surfactants are PFAS—the very compounds at issue in the Petition here.  This requirement has been in force for virtually the entire time period at issue in the Petition.  In 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," but as a practical matter no AFFF can meet the MilSpec's other requirements without using PFAS.  No AFFF not containing PFAS has been qualified as meeting the MilSpec.

16.     So-called "Part 139" airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft.  *See* 14 C.F.R. § 139.1 (2019).  The federal government requires Part 139 airports to use MilSpec AFFF.  On July 8, 2004, the FAA issued Advisory Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports] must meet the requirements of Mil F 24385F."[7]  Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the MilSpec AFFF requirement was, in fact, mandatory and that "[a]ny

---

[6] *Id.*

[7] *See* Advisory Circular 150/5210-6D at 4, Chapter 6, https://tinyurl.com/yxpk87ky.

AFFF purchased after July 1, 2006 by an airport operator certified under Part 139 must meet [Mil-F-24385F]."[8]  The FAA explained:

> There are several reasons for this requirement.  First of all, AFFF has to be compatible when mixed.  AFFF manufactured by different manufacturers, although meeting the UL 162 standard, may not be compatible.  AFFF meeting the Military Specification will always be compatible with other Military Specification AFFF no matter the manufacturer.  Second, AFFF meeting the military specification requires less agent than AFFF meeting UL 162 to extinguish the same size fire.  Finally, the requirement to use Mil Spec is in concert with the National Fire Protection Association National Fire Code 403, paragraph 5.1.2.1.[9]

17.     On September 1, 2016, the FAA issued a superseding CertAlert, which reiterated that "Airport operators must ensure any AFFF purchased after July 1, 2006, meets Mil-Spec standards."[10]  Thus, from July 1, 2006 to present, airport operators holding an FAA Airport Operating Certificate pursuant to Part 139 have been required to purchase MilSpec AFFF for use.

18.     The Petition alleges that Plaintiff was exposed to PFAS-containing AFFF "throughout the course of [his] 40+ year career as a firefighter," which ran from "approximately 1978 through 2020."  (Ex. A ¶¶ 12, 9).  A substantial portion of his career as a firefighter has been spent working at the Airport.  According to his LinkedIn profile (Ex. B), Plaintiff has worked as "Aircraft Rescue & Firefighter Manager" at the Airport since May 2012.  At the Airport, all AFFF that Plaintiff was exposed to was MilSpec AFFF.  Tyco denies that AFFF of any sort caused or contributed to Plaintiff's alleged injuries, but to the extent that Plaintiff will argue to the contrary, Tyco intends to defend itself on the ground that Plaintiff's alleged injuries were caused at least in

---

[8] *See* DOT/FAA/TC-14/22, Impact of Alternative Fuels Present in Airports on Aircraft Rescue and Firefighting Response at 25-26 (Aug. 2014), https://tinyurl.com/rt35dgp.

[9] *Id.*

[10] Federal Aviation Administration, Cert Alert No. 16-05: Update on Mil-Spec Aqueous Film Forming Foam (AFFF) at 2 (Sept. 1, 2016), https://tinyurl.com/ya5pvbkh.

part by MilSpec AFFF that Tyco manufactured and that contained PFAS at the specific direction of the U.S. government.

**B.**     **All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

   *1.     The "Person" Requirement Is Satisfied*

19.     The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and a corporation, respectively) meet the definition of "persons" under the statute. For purposes of Section 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

   *2.     The "Acting Pursuant to" Requirement Is Satisfied*

20.     The second requirement ("acting pursuant to" or "acting under" the direction of a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. The requirement is to be "liberally construed in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Rather, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255 (emphasis in original); *accord Latiolais*, 951 F.3d at 291 (defendant's acting as a federal contractor satisfies the requirement).

21.     The requirement of "acting pursuant to" federal direction is met here because the effect of Plaintiff's action, at least in part, is to challenge Tyco's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself."

*Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself.  *See Ayo*, 2018 WL 4781145, at *9; *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[11]  Accordingly, the federal government has long depended upon outside contractors like Tyco to develop and supply MilSpec AFFF.  Every court to address the issue has concluded that manufacturers of MilSpec AFFF have made and sold the product pursuant to federal direction for purposes of Section 1442(a)(1).  *See Chemguard*, 2021 WL 744683, at *3; *Ayo*, 2018 WL 4781145, at *8–9; *see also* MDL Order 1, at 3–6; MDL Order 2, at 3–5; MDL Order 3, at 3–6.

22.     In designing, manufacturing, and supplying the MilSpec AFFF that Plaintiff was exposed to at the Airport, Tyco acted under the direction and control of one or more federal officers.  Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the Department of Defense ("DoD").[12]

3.     *The "Connected or Associated With" Requirement Is Satisfied*

23.     The third requirement for removal under Section 1442(a)(1) is that the removing defendant's actions pursuant to federal direction must be "connected or associated with" the

---

[11] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

[12] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

lawsuit. *Latiolais*, 951 F.3d at 296. This requirement, sometimes termed the "nexus" requirement, erects a hurdle that "is quite low." *Isaacson*, 517 F.3d at 137.

24.     This requirement is readily satisfied here. Plaintiff's purported injuries arise at least in part from MilSpec AFFF. He claims injuries from exposure to PFAS-containing AFFF "throughout" his career, much of which has been spent working at the Airport, where the AFFF that he was exposed to was MilSpec AFFF. It is irrelevant that the Plaintiff does not expressly allege that he has been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case" when determining whether the requisite nexus exists between the lawsuit and the defendant's conduct under federal direction. *Isaacson*, 517 F.3d at 137; *see also Chemguard*, 2021 WL 744683, at *3.

25.     Where, as here, a plaintiff's claimed injuries arise at least in part from MilSpec AFFF, the nexus requirement is satisfied. *See Chemguard*, 2021 WL 744683, at *3; *Ayo*, 2018 WL 4781145, at *9; MDL Order 1, at 5–6; MDL Order 2, at 5 (finding the nexus element satisfied where Tyco's MilSpec AFFF products were used at several Part 139 airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single Part 139 airport).

### 4.     The "Colorable Federal Defense" Requirement Is Satisfied

26.     The fourth requirement, that the defendant proffer a "colorable federal defense," is satisfied by Tyco's assertion of the government contractor defense.

27.     At the removal stage, a defendant need only show that its government contractor defense is colorable, *Sawyer*, 860 F.3d at 254, that is, "that the defense is 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407). "[A]n asserted federal defense is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly

insubstantial and frivolous." *Latiolais*, 951 F.3d at 297 (internal quotation marks and citations omitted). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[13] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

28.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

29.     Tyco has satisfied these elements for purposes of removal. As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Tyco's products appeared on the DoD's Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec

---

[13] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use [PFAS] . . . in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4; MDL Order 3, at 5; *see also Chemguard*, 2021 WL 744683, at *4.

30.     Moreover, the government was sufficiently informed regarding relevant alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into certain species of PFAS, including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"); that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[14]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[15]  By no later than 2001, DoD was aware of data purportedly

[14] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

[15] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[16]  Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[17]  *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of [PFAS]-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

31.    At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after

[16] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[17] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

32.     The purpose of the government contractor defense is to prevent plaintiffs from using state-law tort claims to engage in "second guessing" of the discretionary judgments of federal officials embodied in government product specifications. *Boyle*, 487 U.S. at 511. Plaintiff's action seeks to do exactly that. His alleged injuries arise at least in part from Tyco's production and sale of AFFF manufactured to military specifications. Plaintiff alleges that AFFF is defective and harmful because it contains PFAS, but the use of those chemicals in MilSpec AFFF was required by the military specifications. The conflict is apparent: MilSpec AFFF was developed by Tyco and other manufacturers to meet specifications established by the DoD. The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which Tyco could not comply with both the MilSpec and the purported state-prescribed duty of care. In short, Plaintiff is attempting to use state tort law to attack design choices dictated by the government. The government contractor defense precludes such an attack. *See id.* at 509.

### PLAINTIFF'S PURPORTED DISCLAIMER OF FEDERAL OFFICER REMOVAL JURISDICTION IS INEFFECTIVE

33.     In Paragraph 8 of the Petition, Plaintiff purports to "disclaim[] any cause of action or recovery for any injuries/damages resulting from any use and/or exposure to Defendants' AFFF-

containing toxic PFAS, which were caused by any conduct, action, acts or omissions of any and all federal officers, or committed at the direction of an officer of the United States Government." That disclaimer is ineffective to prevent removal of this action under Section 1442(a)(1) because it is "circular." In order to know which, if any, acts by Tyco the disclaimer covers—*e.g.*, whether it applies to Tyco's manufacture of MilSpec AFFF that Plaintiff was exposed to at the Airport— there would need to be a determination of whether those acts were undertaken "at the direction of an officer of the United States Government." But that is an issue inextricably bound up with Tyco's government contractor defense, which Tyco is entitled to litigate and have decided *in federal court*. *See Jefferson County*, 527 U.S. at 432; *accord Chemguard*, 2021 WL 744683, at *3 ("The specific factual questions of whether the challenged act was within the scope of the federal contract are for federal—not state—courts to answer."). In other words, determining the effect of the disclaimer would require—not avoid—an adjudication of Tyco's federal defense. For this reason, courts have routinely held that purported disclaimers are ineffective to prevent removal under Section 1442(a)(1) when the disclaimed subject matter is defined in terms of whether the defendant acted under federal direction. *See, e.g.*, *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315, 1335–36 (N.D. Ala. 2010); *Marley v. Elliot Turbomachinery Co.*, 545 F. Supp.2d 1266, 1274–75 (S.D. Fla 2008); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 n.6 (D. Mass. 2008); *accord Neal v. Ameron Int'l Corp.*, 495 F. Supp. 3d 375, 391–92 (M.D. La. 2020).

WHEREFORE, Tyco hereby removes this action from the Civil District Court for the Parish of Orleans to this Court.

RESPECTFULLY SUBMITTED this 30th day of December, 2021.

*/s/ Craig Isenberg*
Craig Isenberg, 29603 (T.A.)
Janelle E. Sharer, 37305
BARRASSO USDIN KUPPERMAN
   FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana  70112
Telephone:  504-589-9700
Facsimile:  504-589-9701
cisenberg@barrassousdin.com
jsharer@barrassousdin.com

*Counsel for Tyco Fire Products LP*
*and Chemguard Inc.*

17

## CERTIFICATE OF SERVICE

I, Craig Isenberg, hereby certify that this document filed through the ECF system will be sent electronically to all CM/ECF participants. I further certify that I mailed the foregoing document by first-class mail to all non-CM/ECF participants, including plaintiff.


Dated: December 30, 2021                                        */s/ Craig Isenberg*